1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SIERRAPINE, A California Limited
     Partnership,
11
                 Plaintiff,                          No. 2:08-cv-02144 MCE KJN
12
           v.
13
     REFINER PRODUCTS
14   MANUFACTURING, INC., a North
     Carolina Corporation, and DOES 1-10,
15   INCLUSIVE,

16              Defendants.                           ORDER
     _____/
17

18              Presently before the court is plaintiff's motion to compel further responses to

19   plaintiff's third set of interrogatories, numbered 16 through 18, and fourth set of requests for the

20   production of documents, numbered 14 through 20.[1]  (See generally Pl.'s Mot. to Compel, Dkt.

21   No. 90.)  Although discovery closed over one year ago, plaintiff was granted leave to conduct

22   additional, limited discovery by the district judge assigned to this matter, United States District

23   Judge Morrison C. England, Jr., with any substantive disagreements regarding the discovery to be

24   resolved by the undersigned.  (See Order, May 11, 2011, Dkt. No. 87.)  Plaintiff's motion to

25   _____

26        [1]  This matter proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1).

                                                 1

compel concerns whether—and, if so, to what extent—plaintiff may permissibly conduct

discovery into a "policyholder's release" agreement executed by defendant and its insurer,

Travelers, relative to an underlying breach of contract and breach of warranty action.  Travelers is

a not a named defendant, and the operative Second Amended Complaint (Dkt. No. 34) includes

no allegations of, or claims for relief premised on, some fraudulent conveyance or transfer in

regards to the "policyholder's release" agreement.

The undersigned heard this matter on its law and motion calendar on July 28,

2011.  (Minutes, Dkt. No. 94.)  Attorney Michael J. Thomas appeared on behalf of plaintiff.

Attorney Duncan MacDonald appeared on behalf of defendant.  The parties previously filed a

Joint Statement Re Discovery Disagreement ("Joint Statement").  (Joint Statement, Dkt. No. 93;

see also MacDonald Decl., Dkt. No. 92.)

The undersigned has considered the Joint Statement and related materials, oral

arguments, and appropriate portions of the record in this case and, for the reasons stated below,

denies plaintiff's motion to compel.[2]  At bottom, plaintiff's discovery requests—which in most

respects far exceed the leave granted by Judge England—seek information about defendant's

assets and ability to satisfy a potential judgment in the context of a breach of contract and breach

of warranty action.  This discovery does not seek information and materials that are relevant to

any of the claims or defenses at issue in the litigation, nor is it reasonably calculated to lead to the

discovery of admissible evidence.  See Fed. R. Civ. P. 26(b)(1).  Although the undersigned is not

unsympathetic to plaintiff's concern regarding the apparent uncertainty it faces in regards to a

pending settlement offer made by defendant and going forward in the litigation, plaintiff's

_____

[2] The undersigned notes that the court's review of the pending motion has been unnecessarily complicated by plaintiff's decision not to address the subject discovery in the Joint Statement request-by-request, as required by this court's Local Rules.  See E. Dist. Local Rule 251(c)(3).  It appears that plaintiff made a similar decision during the meet-and-confer process with defendant. Plaintiff's decisions in these regards have led to a confused presentation of the issues.  However, that presentation has not materially hampered the resolution of plaintiff's motion because the success of the motion turns on the question of relevance under Federal Rule of Civil Procedure 26(b)(1).

discovery, even if narrowed, does not seek relevant information and materials.[3]  Plaintiff's interrogatories and document requests amount to premature, post-judgment discovery of a judgment debtor, which should be sought consistent with Federal Rule of Civil Procedure 69(a)(2).

However, the undersigned orders defendant to supplement its Rule 26(a)(1)(A)(iv) disclosures to plaintiff on or before August 19, 2011, to provide "for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."  Fed. R. Civ. P. 26(a)(1)(A)(iv); see also Fed. R. Civ. P. 26(e)(1). Defendant shall make a diligent and complete inquiry in regards to the supplementation of its disclosures—it is not sufficient for defendant's counsel to make ambiguous representations based on materials that they and defendant have "identified" or have "knowledge of."  The undersigned expects a more forthcoming disclosure from defendant and its counsel.

I.      BACKGROUND

The underlying lawsuit, commenced in state court in August 2008 and removed to this court in September 2008, involves plaintiff's claims that defendant breached several express and implied commercial warranties in relation to work performed by defendant pursuant to a contract with plaintiff.  (See generally Second Am. Compl.)  In short, plaintiff contends that defendant defectively rebuilt components of two "refiners" that plaintiff intended to use to manufacture medium density fiberboard.

As noted above, defendant's insurer is or was the Travelers insurance company. On December 29, 2010, defendant and Travelers entered into a "Confidential Settlement Agreement" through which defendant completely released its claims for defense and indemnity

---

[3] Because the undersigned's resolution of plaintiff's motion to compel turns on "relevance," the undersigned does not address plaintiff's and defendant's remaining arguments, such as those addressed to defendant's assertions of privileges and failure to provide a privilege log, in this order.

1   submitted to Travelers in connection with plaintiff's lawsuit in exchange for monetary

2   consideration in an amount that both defendant and Travelers have withheld from plaintiff.  (See

3   Addison Decl., Ex. 4, Dkt. No. 93, Dkt. No. 93-4.)

4              It appears uncontroverted that plaintiff learned of the Confidential Settlement

5   Agreement, also referred to by the parties and the court as the "Travelers Agreement" or the

6   "policyholder's release," on or about January 11, 2011.[4]  (See Order, May 11, 2011, at 2 and 4.)

7   Plaintiff represents in its portion of the Joint Statement that on December 3, 2010, it had

8   transmitted a settlement demand to Travelers's counsel, David Worthington, which included

9   plaintiff's analysis of Travelers's insurance obligations for covered damages.  (See Joint

10  Statement at 2-3.)  Worthington responded by way of a letter dated January 10, 2011, and

11  conveyed to plaintiff that defendant and Travelers had reached and memorialized an agreement

12  regarding the litigation.  (Id. at 3; see also Letter, Jan. 10, 2011, Ex. 1 to Pl.'s Interrogatories, Set

13  Three, attached as Exhibit 1 to Addison Decl.)  Worthington informed plaintiff's counsel that

14  plaintiff should direct all future communications, including settlement communications, to

15

16  ─────────────────────

17       [4]  Defendant's counsel characterizes the Travelers Agreement or policyholder's release as
    follows:

18              In December 2010, RPM and Travelers entered into an agreement regarding
                the ongoing defense and indemnity of RPM in this action ("the Travelers
19              Agreement").  Attorney John Heller . . . negotiated the agreement on behalf
                of RPM and signed it for RPM.  Robert A. Nevens negotiated on behalf of
20              Travelers and signed on behalf of that entity.  The parties agreed the terms of
                the agreement would be kept confidential.  The consideration exchanged
21              between the parties as part of the Travelers Agreement was, and is,
                particularly sensitive because that term was derived from the parties'
22              counsels' analysis of the case, evaluation of RPM's liability exposure,
                calculation of defense costs, and litigation strategy.  As RPM's counsel
23              negotiated for and signed the agreement, all of the records regarding the
                agreement are held within the litigation files of RPM's trial counsel . . . .
24              Furthermore, all of the documents prepared regarding the Travelers
                Agreement within our law firm's files are comprised of attorney-client
25              communications and/or work product.

26  (MacDonald Decl. ¶ 7.)

4

1    defendant's counsel because Worthington would be withdrawing from the action.[5]  On or about

2    January 25, 2011, defendant's counsel, John Heller, allegedly confirmed the existence of the

3    executed policyholder's release agreement.  (See Joint Statement at 3.)

4           The discovery completion deadline passed on May 14, 2010.  (See Stip. & Order,

5    Mar. 11, 2010, Dkt. No. 38.)  However, as a result of plaintiff's January 11, 2011 discovery of

6    the policyholder's release agreement, plaintiff moved, on April 7, 2011, to modify the pretrial

7    scheduling order in order to: (1) re-designate additional expert witnesses who had been

8    previously stricken; and, relevant here, (2) seek additional discovery regarding the policyholder's

9    release agreement executed by defendant and Travelers.  (See Pl.'s Mot. to Amend the Sched.

10   Order, Dkt. No. 82.)  As acknowledged in Judge England's May 11, 2011 order, plaintiff's

11   motion to reopen discovery sought "'written discovery tailored to require production of the

12   [policyholder's release] and related information and documents.'"  (Order, May 11, 2011, at 5

13   (modification in original).)

14          Judge England granted plaintiff's request to reopen discovery "for the limited

15   purpose of the alleged policyholder's release, only."  (Order, May 11, 2011, at 5.)  In granting

16   plaintiff limited leave to conduct additional discovery, Judge England stated:

17          Since no authority has been cited which plainly forecloses the requested
            discovery, the Court finds *it appropriate to reopen discovery, for the*
18          *limited purpose of the alleged policyholder's release, only.*  All such
            discovery, along with any disputes relative to the discovery, must be
19          completed not later than September 2, 2011.

20   (Id. (emphasis added).)  His order further stated:

21          The PTSO is also modified to permit *limited additional discovery*
            *pertaining to the so-called policyholder's release alleged by Plaintiff.*  All
22          discovery pertaining to that limited additional discovery, along with any
            disputes related thereto, shall be completed and/or resolved by **September**
23          **2, 2011.**

24

25

26          [5]  (See Notice of Disassociation of Counsel, Dkt. No. 81.)

                                              5

1  (Id. at 6 (first emphasis added).)[6]  In reaching this conclusion, Judge England reviewed some of

2  the seemingly conflicting, out-of-district authorities cited by the parties in regards to discovery of

3  insurance settlement agreements, but did not resolve the apparent conflict or expressly conclude

4  that plaintiff is actually entitled to discover the policyholder's release and related materials and

5  information.  Judge England understandably left any "substantive disagreement about whether

6  discovery is ultimately indicated" to be resolved through a discovery motion, as opposed to a

7  motion to modify the pretrial scheduling order.  (Id.)

8          On May 16, 2011, plaintiff served its third set of interrogatories and fourth set of

9  requests for production of documents.  (Addison Decl., Ex. 1.)  Plaintiff's interrogatories and

10  document requests contain the following definition of the term "Insurance Agreements":

11          "Insurance Agreements" shall mean and include all documents that are
           release [sic] or any other type of agreements (including but not limited to
12          all drafts and unexecuted documents) between RPM and Traveler's [sic]
           Insurance or any other insurance company, and that relate to the facts
13          SierraPine alleges in its Second Amended Complaint in the Lawsuit;
           including the agreement(s) mentioned in the January 10, 2011 letter David
14          Worthington sent to Shelley Addison attached hereto as Exhibit 1.

15  Plaintiff's interrogatories 16 through 18 state:

16          **INTERROGATORY NO. 16:**

17          Name every person who participated in the negotiation or
           execution of, or correspondence about, any of the Insurance Agreements.
18

19          **INTERROGATORY NO. 17:**

20          Name every person who prepared any report that RPM provided to
           any potential or actual reinsurer during the time period of January 1, 2005
21          through December 31, 2010.

22          **INTERROGATORY NO. 18:**

23          Name every person who participated in setting or identifying
           reserves relating to any insurance policy that benefited [sic] RPM and was
24          effective during the time period of January 1, 2005 through December 21,
           2010.

25  _____

26      [6]  The bench trial in this case has been continued until July 2, 2012.  (Minute Order, July 20,
    2011, Dkt. No. 91.)

Plaintiff's document requests consist of the following:

**REQUEST FOR PRODUCTION NO. 14:**

All insurance policies relating to any general liability or other insurance coverage, provided by any insurance company for the benefit of RPM, effective during the time period of January 1, 2005 through December 31, 2006.

**REQUEST FOR PRODUCTION NO. 15:**

All Insurance Agreements.

**REQUEST FOR PRODUCTION NO. 16:**

All documents that relate in any way to any negotiation or execution of, or correspondence about, the Insurance Agreements.

**REQUEST FOR PRODUCTION NO. 17:**

All documents relating to any reservation of rights letters or responses thereto that RPM received from or sent to any insurance company during the period January 1, 2005 through December 21, 2010.

**REQUEST FOR PRODUCTION NO. 18:**

All reports provided to any potential reinsurers of RPM that were prepared or sent during the time period of January 1, 2005 through December 21, 2010.

**REQUEST FOR PRODUCTION NO. 19:**

All documents relating in any way to any reserves identified or determined, with respect to any general liability or other insurance coverage provided by any insurer for the benefit of RPM, during the time period of January 1, 2005 through December 21, 2010.

**REQUEST FOR PRODUCTION NO. 20:**

Copies of all checks paid to RPM or its principals as consideration for any of the Insurance Agreements.

(Id.)

On June 20, 2011, defendant responded to the new interrogatories and document requests.  (Id., Ex. 2.)  The responses included objections and some limited responses, but defendant provided no privilege log in connection with its assertion of privileges.

Meanwhile, plaintiff served a Rule 45 subpoena on Travelers on May 27, 2011,

7

1    seeking several categories of documents.[7]  (MacDonald Decl., Ex. D.)  Travelers ultimately

2    produced some documents to plaintiff, but asserted several objections (i.e., attorney work

3    product, attorney-client privilege, and "confidential and proprietary" information).  (Id., Ex. F.)

4    A redacted version of the Confidential Settlement Agreement was included in Travelers's

5    document production.  (Addison Decl., Ex. 4.)  Travelers only redacted the text of the

6    Confidential Settlement Agreement that states the monetary consideration paid by Travelers for

7    the release of defendant's claim.  (Confidential Settlement Agreement § 3.1.)

8    II.    DISCUSSION

9          A.    Plaintiff's Motion to Compel Is Denied On Relevance Grounds

10                Plaintiff offers two primary bases for the extremely broad discovery into the

11   policyholder's release agreement and a variety of other insurance-related matters.  First, plaintiff

12   is concerned that it cannot adequately assess a recent offer of settlement made by defendant.

13   (See Joint Statement at 3.)  Plaintiff represents that "RPM now has made a confidential

14   settlement offer to SierraPine, which SierraPine is unable to analyze without knowing how the

15   policyholder's release may affect the coverage provided under the previously disclosed policy."

16   (Id.)  Second, plaintiff is concerned that it is unable to properly evaluate whether it remains cost-

17   effective to pursue this litigation to trial.  Plaintiff states:

18                SierraPine understands the practical significance of RPM's insurance, and
                 SierraPine's lack of information regarding the state of that insurance puts
19               it in a serious dilemma.  If there are no insurance proceeds available,
                 SierraPine may forego further expert depositions and expensive trial
20               preparation.  SierraPine needs to know and consider the terms of this new
                 insurance agreement in order to make decisions about any potential for
21               settlement or preparation for trial.

22   (Id. at 12.)  At the hearing, plaintiff's counsel argued that plaintiff might, at some point, be able

23

24          [7] Defendant impermissibly served objections to the Travelers subpoena.  (MacDonald Decl.,
     Ex. E.)  Defendant's proper course of action would have been to move to quash the subpoena or seek
25   a protective order.  See, e.g., Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005) ("A
     party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a
26   protective order or make a motion to quash.").  It pursued neither option.

                                              8

1   to "unwind" the Confidential Settlement Agreement under California insurance law.  The

2   undersigned finds that none of these bases for plaintiff's discovery supports plaintiff's contention

3   that the discovery seeks "relevant" information under Federal Rule of Civil Procedure 26(b)(1).

4           In terms of the scope of permissible discovery, Rule 26(b)(1) provides that unless

5   otherwise limited by court order, "[p]arties may obtain discovery regarding any nonprivileged

6   matter that is *relevant to any party's claim or defense*--including the existence, description,

7   nature, custody, condition, and location of any documents or other tangible things and the

8   identity and location of persons who know of any discoverable matter."[8] Fed. R. Civ. P. 26(b)(1)

9   (emphasis added).  Rule 26(b)(1) further provides that "[r]elevant information need not be

10   admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of

11   admissible evidence."  Id.  However, as the Advisory Committee Notes to the 2000 Amendment

12   to Rule 26(b)(1) indicate, the "Committee intends that the parties and the court focus on the

13   actual claims and defenses involved in the action."

14           As noted above, plaintiff's main reasons for propounding broad discovery

15   regarding the policyholder's release agreement are, in essence, that plaintiff: (1) cannot

16   effectively evaluate a pending settlement offer from defendant without knowing what

17   consideration was paid in exchange for the release of defendant's insurance claim; and (2) does

18   not know whether defendant remains able to satisfy a potential judgment after execution of the

19   policyholder's release agreement.  As stated at the hearing on plaintiff's motion, the undersigned

20   concludes that plaintiff is prematurely attempting to conduct discovery about defendant's ability

21   to pay or satisfy a potential judgment or settlement.

22           Although the Ninth Circuit Court of Appeals does not appear to have directly

23   addressed the issue, district courts across the country generally do not allow pre-judgment

24

25       [8] Rule 26(b)(1) further provides: "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).  The undersigned finds that plaintiff has not shown good cause that supports expansion of the normally

26   applied relevance standard.

discovery regarding a defendant's financial condition or ability to satisfy a judgment—aside from those insurance-related disclosures made pursuant to Rule 26(a)(1)(A)(iv), or where punitive damages are available—on the grounds that such discovery is not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence.  See, e.g., Dickson v. Nat'l Maintenance & Repair of Ky., Inc., No. 5:08-CV-8, 2011 WL 2610195, at *1-2 (W.D. Ky. July 1, 2011) (unpublished) (denying motion to reopen discovery to permit plaintiff to seek discovery of reservation of rights letters and information about the defendant's assets and ability to pay a judgment) (citing Ranney-Brown Distribs., Inc. v. E.T. Barwick Indus., Inc., 75 F.R.D. 3, 5 (S.D. Ohio 1977) ("Ordinarily, Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence."); DiNapoli v. Int'l Alliance of Theatrical Stage Employees 8, Civ. Action No. 09-5924, 2011 WL 1004576, at *7 (E.D. Pa. Mar. 18, 2011) (unpublished) ("If the plaintiff does not claim punitive damages, or if punitive damages are unavailable, the court will not allow discovery to determine whether the defendant has the means to satisfy a judgment because a defendant's ability to satisfy a judgment has little to do with the subject matter of the litigation notwithstanding a claim for punitive damages.") (citing Grosek v. Panther Transp., Inc., 251 F.R.D. 162, 165 (M.D. Pa. 2008)); Hallford v. Cal. Dep't of Corrections, No. CIV S-05-0573 FCD DAD P, 2010 WL 921166, at *2 (E.D. Cal. Mar. 12, 2010) (unpublished) (denying, on relevance grounds among others, plaintiff's motion to compel the production of a copy of salary schedules for employees in the individual defendants' employment positions for the purpose of considering an offer of settlement); Lincoln Elec. Co. v. MPM Techs., Inc., No. 1:08-CV-2853, 2009 WL 2413625, at *3 & n.2 (N.D. Ohio Aug. 5, 2009) (unpublished) (questioning the wisdom of the prevailing rule, but in any event denying on relevance grounds plaintiff's motion to compel discovery responses regarding the defendant's financial status or ability to satisfy a judgment in a breach of contract and warranties action); Mack Boring & Parts Co. v. Novis Marine Ltd., Civ. Action No. 06-2692 (HAA), 2008

WL 5136955, at *1-3 (D.N.J. Dec. 5, 2008) (unpublished) (collecting cases and denying motion to compel discovery of defendant's ability to satisfy a soon-to-be entered judgment in a contract-based action where punitive damages were not implicated); U.S. EEOC v. Ian Schraeger Hotels, Inc., No. CV 99-0987GAFRCX, 2000 WL 307470, at *4 (C.D. Cal. Mar. 8, 2000) (unpublished) (granting on part a motion to compel in a Title VII action, requiring the defendants to produce their financial information so plaintiff could determine, relative to a claim for punitive damages, whether defendants had attempted to transfer income or assets to others to avoid potential liability if defendants lose the pending litigation); cf. U.S. for the Use and Benefit of P.W. Berry Co. v. Gen. Elec. Co., 158 F.R.D. 161, 164 (D. Or. 1994) (granting motion for protective order in a breach of contract action, precluding pre-judgment discovery of corporate and individual financial information including tax returns and financial statements, because that information was not relevant within the meaning of Rule 26(b)(1)); accord James Wm. Moore, 6 Moore's Federal Practice § 26.41[8][a] (Matthew Bender 3d ed. 2011) (discussing the increasingly restrictive standards pertaining to discovery of a party's financial condition and stating that "[t]he relevancy requirement is not met when a party wants to know the opposing party's assets prejudgment to determine what assets are available for attachment should that party succeed in obtaining a favorable judgment").

Rather than conduct pre-judgment discovery into a defendant's assets or ability to satisfy a judgment, an appropriate means of obtaining such information is to conduct post-judgment discovery pursuant to Federal Rule of Civil Procedure 69(a)(2), which provides: "*Obtaining Discovery.*  In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located."

Here, plaintiff's discovery is aimed at determining how much consideration Travelers paid defendant in exchange for a release or settlement of defendant's claim for defense

and indemnity relative to the underlying litigation.  In essence, plaintiff would like to know what money defendant received so that plaintiff may better evaluate defendant's recent settlement offer and the value, i.e., the cost versus the benefit, of further pursuing its breach of contract and warranty claims.  Plaintiff has not attempted to argue that this discovery is actually addressed to any of the actual claims and defenses raised in the pleadings.  Instead, plaintiff argues the issue of relevance generally in its portion of the Joint Statement (see Joint Statement at 12-13) and does not substantiate how each discovery request seeks information addressed to a claim or defense in this action or is reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff relies on the California Court of Appeal's decision in Norton v. Superior Court, 24 Cal. App. 4th 1750, 30 Cal. Rptr. 2d 217 (Ct. App. 1994), to support its argument that the discovery sought is relevant.[9]  In its portion of the Joint Statement addressing relevance, plaintiff relied on Norton for the unexplained proposition that "the terms and conditions of the [insurance] settlement agreement could be, or could lead to, admissible evidence." (Joint Statement at 12-13 (citing Norton, 24 Cal. App. 4th at 1762, 30 Cal. Rptr. 2d at 224).)  At a minimum, Norton is inapposite because the Court of Appeal was not interpreting relevance under Federal Rule of Civil Procedure 26(b)(1).[10]  Additionally, unlike this ordinary contract action, Norton involved the unique context of a legal malpractice action where the plaintiffs sued their attorney in connection with an underlying settlement of plaintiffs' property damage claims against a municipality.  The attorney moved to compel production of documents disclosing the terms and conditions of the plaintiffs' settlement with their insurance company.  In vacating the

_____

[9]  Plaintiff's discussion of Norton in its portion of the Joint Statement consisted of one, perfunctory and unexplained parenthetical. (Joint Statement at 12-13.)  Plaintiff's counsel relied more heavily, if not entirely, on Norton at the hearing on plaintiff's motion to compel.

[10]  Plaintiff has cited no federal authorities interpreting relevance under Rule 26(b)(1). Indeed, plaintiff no longer relies on the case that appears to have prompted Judge England to reopen discovery in this case: Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicecenter of Haverstraw, Inc., No. 02 Civ. 0504(RCC), 2003 WL 22110281 (S.D.N.Y. Sept. 10, 2003) (unpublished). The undersigned finds Goodyear distinguishable from this case because, among other things, Goodyear actually involved claims against the insurer.

1    trial court's order denying the motion to compel and ordering an *in camera* review of the

2    settlement agreement, the Court of Appeal admittedly speculated at length about relevance

3    without actually having seen the settlement agreement in question:

4              [W]e conclude it is possible the terms and conditions of the State Farm
               settlement agreement could be, or could lead to, admissible evidence.  The
5              requested information could result in evidence of the extent of the Eins'
               injury from the alleged malpractice, their motive in bringing the
6              malpractice action, or their bias and credibility as witnesses.  For example,
               the settlement agreement might provide State Farm would make a future
7              payment to the Eins up to a certain amount depending on the amount they
               recover from Norton.  In the settlement with State Farm the Eins might
8              acknowledge the two settlements together constitute a complete
               satisfaction for all their injuries.  Or, the settlement agreement might
9              provide that in return for State Farm's payment of their property damage
               claim the Eins agree to sue Norton for malpractice in obtaining an
10             inadequate settlement with the City and to subrogate State Farm to that
               claim or turn over the proceeds of any recovery to State Farm.

11

12   Norton, 24 Cal. App. 4th at 1761-62, 30 Cal. Rptr. 2d at 223-24.  The Court of Appeal in Norton

13   did not announce a broad rule that insurance settlement agreements are always relevant and thus

14   discoverable; instead, it remanded the matter for consideration by the trial court.  Moreover,

15   Norton is distinguishable from this straightforward breach of contract and warranty action,

16   where, unlike in Norton, plaintiff is entirely aware that Travelers has been released through the

17   Confidential Settlement Agreement and has seen all but the consideration term from that

18   agreement.  The undersigned concludes that Norton does not support a finding of relevance in

19   this case.

20          At the hearing, plaintiff's counsel offered more elaborate arguments in support of

21   plaintiff's contention that the un-redacted Confidential Settlement Agreement, and ostensibly

22   much of the other discovery sought, is subject to mandatory disclosure under Federal Rule of

23   Civil Procedure 26(a)(1)(A)(iv), which requires the disclosure of "any insurance agreement under

24   which an insurance business may be liable to satisfy all or part of a possible judgment in the

25   action or to indemnify or reimburse for payments made to satisfy the judgment."  First, plaintiff

26   contends that the Confidential Settlement Agreement is actually an "amendment" to—as opposed

                                                    13

1    to a release from or settlement of—the insurance claim or claims between defendant and

2    Travelers in relation to this litigation.  This argument has no basis in fact.  The terms of the

3    Confidential Settlement Agreement, as well as defendant's counsel's representation at the

4    hearing, make clear that the Confidential Settlement Agreement contemplates no ongoing

5    insurance, indemnity, or defense relationship between Travelers and defendant insofar as this

6    litigation is concerned.  (See Confidential Settlement Agreement § 2.4 ("It is the intention of the

7    Parties that this Agreement shall resolve fully and completely their rights and obligations as to

8    each other for the Claim."); id. § 3.1 ("The payment of this amount shall be a complete and final

9    release, compromise, and settlement of the Claim."); id. § 9 ("This Agreement is not a policy of

10   insurance and the signatories do not intend that it will be interpreted as such."); accord id. §§ 4.1,

11   4.4, 6.)  The undersigned finds unpersuasive plaintiff's attempt to convert the policyholder's

12   release agreement in to an amendment.

13        Second, plaintiff's counsel argued at the hearing that at some unknown point in

14   the future it might be able to unwind the Confidential Settlement Agreement under provisions of

15   the California Insurance Code and, accordingly, Travelers might still be liable to satisfy all or

16   part of a possible judgment or to indemnify or reimburse defendant for a potential judgment that

17   has not yet been entered.  This argument is entirely speculative and has no basis in fact, and the

18   undersigned finds this argument similarly unpersuasive.[11]

19        At bottom, the undersigned is persuaded by the district courts that have concluded

20   that the plain language of then-numbered Rule 26(a)(1)(D) "merely requires the disclosure of an

21   insurance policy or other agreement that gives rise to an insurer's obligation to indemnify or hold

22   its insured harmless for a judgment, and does not require the production of all agreements

23   relating to insurance."  See Excelsior College v. Frye, 233 F.R.D. 583, 585-86 (S.D. Cal. 2006);

---

25   [11]  If plaintiff truly can "unwind" the Confidential Settlement Agreement, it surely may
     attempt to do so post-judgment; plaintiff has articulated no persuasive reason as to why it needs the
26   subject discovery now.

1   accord Native AM. Arts, Inc., No. 01 C 1618, U.S. Dist. LEXIS 4393, at *5-6 (N.D. Ill. Mar. 20,

2   2003) (unpublished) (concluding that then-numbered Rule 26(a)(1)(D) does not require

3   disclosure of a "reservation of rights" letter); All AT&T Corp. Fiber Optic Pls. v. All AT&T

4   Corp. Fiber Optic Defs., No. IP 99-C-9313 H/K et seq., 2002 U.S. Dist. LEXIS 11219, at *5-8

5   (S.D. Ind. June 5, 2002) (unpublished) ("All AT&T") (denying motion to compel production of

6   settlement agreement between AT&T and its liability insurers under then-numbered Rule

7   26(a)(1)(D) where AT&T's insurers would no be obligated to indemnify AT&T).  The court in

8   All AT&T succinctly captured the difference the policies supporting the disclosure of actual

9   insurance or indemnity agreements, as opposed to insurance settlement agreements that might

10  help an opposing party's assessment of his litigation strategy:

11          Finally, in response to AT&T's correct assertion that the settlement
        agreement contains no promise to indemnify AT&T for any judgment that
12      might be entered in these cases, plaintiffs argue that whatever
        consideration AT&T received is "the functional equivalent of the
13      insurance coverage previously available to AT&T."  The argument is not
        persuasive.  The 1970 amendment to Rule 26 distinguished between
14      insurance coverage and "other facts concerning defendant's financial
        status. . . ." Fed. R. Civ. P. 26, 1970 Rules Advisory Committee Notes.
15      Insurance coverage was singled out for special treatment: "(1) because
        insurance is an asset created specifically to satisfy the claim; (2) because
16      the insurance company ordinarily controls the litigation; (3) because
        information about coverage is available only from defendant or his insurer;
17      and (4) because disclosure does not involve a significant invasion of
        privacy." Id.  The terms of AT&T's settlement agreement in the National
18      Union case fall outside this rationale.  No asset was created specifically to
        satisfy the claims in these cases, nor do the insurers control the litigation.
19      The consideration AT&T received is not the functional equivalent of a
        liability insurance policy and is not discoverable.

20
        The fact that more thorough knowledge of AT&T's finances might
21      help plaintiffs formulate a strategy for settlement negotiations does not
        render the terms of the agreement discoverable.  Similarly, knowledge of a
22      defendant's or insurer's litigation reserves for a case would also be helpful
        to plaintiffs in many cases for the same reasons, but such information is
23      ordinarily not discoverable.

24  All AT&T, 2002 U.S. Dist. LEXIS 11219, at *7-8 (citations omitted).

25          In sum, the undersigned concludes that plaintiff's interrogatories 16 through 18

26  and document requests 14 through 20 do not seek relevant information and materials under

Rule 26(b)(1).  Additionally, the information and materials sought through plaintiff's discovery are not subject to mandatory disclosure under Rule 26(a)(1)(A)(iv).  Accordingly. plaintiff's motion to compel is denied.

B.      Defendant Shall Supplement Its Rule 26(a)(1)(A)(iv) Disclosures

Although the undersigned denies plaintiff's motion to compel, defendant is ordered to supplement its Rule 26(a)(1)(A)(iv) mandatory disclosures.  Under the mandatory disclosure provisions, a party must provide "for inspection and copying . . . , any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv).  Moreover, a party is obligated to supplement or correct its Rule 26(a) disclosures:

> (A) in a timely manner if the party learns that in some material respect the disclosure is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1)(A)(B).

As defendant's counsel acknowledged at the July 28, 2011 hearing, defendant is obligated to supplement or complete its disclosures in regards to "any insurance agreement" as defined in Rule 26(a)(1)(A)(iv).  Supplementation of defendant's Rule 26(a)(1)(A)(iv) disclosures should at least provide plaintiff with an ability to ascertain whether any insurance business remains liable to satisfy all or part of a judgment against defendant, or to reimburse or indemnify defendant.

As noted above and at the hearing, the undersigned is concerned with respect to defendant's counsel's representations at the July 28, 2011 hearing and in defendant's filings regarding defendant's prior insurance-related disclosures.  Defendant's counsel referred to defendant's disclosures in terms of what he and defendant were able to identify or locate, or what

16

1  he and defendant had knowledge of.  (See MacDonald Decl. ¶ 4 ("In March 2009, RPM

2  responded to SierraPine's discovery regarding RPM insurance policies and produce responsive

3  policy documents it was able to locate."); Joint Statement at 4 ("In March 2009, RPM . . .

4  produced the Travelers policy No. I-680-218H2607-TCT-07 that it was able to locate."); Joint

5  Statement at 11 ("In response to the original written discovery to SierraPine two years ago, RPM

6  provided all of the insurance information it had.").)  Perhaps defendant's counsel used this

7  potentially evasive, "wiggle" language as a matter of caution.  Regardless, the court orders

8  defendant and defendant's counsel to conduct a diligent and complete investigation prior to

9  providing plaintiff with forthcoming supplemental Rule 26(a)(1)(A)(iv) disclosures.

10 III.    CONCLUSION

11         For the foregoing reasons, IT IS HEREBY ORDERED that:

12         1.      Plaintiff's motion to compel (Dkt. No. 90) is denied.

13         2.      On or before August 19, 2011, defendant shall supplement its

14 Rule 26(a)(1)(A)(iv) disclosures to plaintiff and provide "for inspection and copying as under

15 Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all

16 or part of a possible judgment in the action or to indemnify or reimburse for payments made to

17 satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv); see also Fed. R. Civ. P. 26(e)(1).

18 Defendant shall make a diligent and complete investigation in regards to the supplementation of

19 these disclosures.

20 ////

21 ////

22 ////

23 ////

24 ////

25 ////

26 ////

1        3.       Reasonable costs and attorneys' fees incurred in connection with

2  plaintiff's motion to compel shall not be awarded because, as stated on the record at the July 28,

3  2011 hearing, other circumstances make an award of expenses unjust.  <u>See</u> Fed. R. Civ. P.

4  37(a)(5)(A)(iii).

5        IT IS SO ORDERED.

6  DATED:  August 1, 2011

7

8                                                        _____

9                                                        KENDALL J. NEWMAN
                                                         UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

18