1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                    EASTERN DISTRICT OF CALIFORNIA
10
11 SIERRAPINE, INC.,                    No. 2:08-cv-02144-MCE-KJN
12           Plaintiff,
13     v.                               FINAL PRETRIAL ORDER
14 REFINER PRODUCTS MANUFACTURING,      TRIAL DATE: **October 1, 2012**
                                        TIME: **9:00 a.m.**
15           Defendant.
   _____/
16
17     Pursuant to Court Order, a Final Pretrial Conference was
18 held on May 3, 2012.  Shelley Addison, M. Max Steinheimer, and
19 Treven Tilbury appeared as counsel for Plaintiff.  John Heller
20 and Lauren Kramer appeared as counsel for Defendant.  After
21 hearing, the Court makes the following findings and orders:
22     I.   JURISDICTION/VENUE
23     Jurisdiction is predicated upon 28 U.S.C. section 1332.
24 Jurisdiction and venue are not contested.
25     II.  NON-JURY
26     A jury trial was not requested by any of the parties
27 pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.
28 Accordingly, this matter will be tried by the Court.

                                1

1     III.   <u>UNDISPUTED FACTUAL ISSUES</u>

2     **Undisputed facts that pertain to all claims**

3     1.   In 2005, SierraPine purchased two used RGP 50-54
4 refiner systems from a paper mill in Millinocket, Maine.  The
5 refiner systems were to be installed at SierraPine's Rocklin,
6 California plant in connection with the refining of wood products
7 for the manufacture of medium density fiberboard.

8     2.   The refiner system at issue in this case consists of
9 several components, which include, in rough order of process: a
10 surge bin, a plug screw feeder and throat assembly (which is
11 driven by a motor), a pre-heater or digester, a discharge screw,
12 a refiner infeed screw assembly, a refiner shaft assembly (also
13 known as a "drop in," "RSA," "rotating assembly" or quill
14 assembly), a hydraulic unit, a jack shaft, motor and couplings,
15 inertia block, segment holders, and a blow line which leads to a
16 dryer.  A RSA is a rotating assembly that transmits power from a
17 motor through the jack shaft to the refiner's rotating disk,
18 which grinds wood product into fiber.  It consists of a rotating
19 shaft attached to a rotor.  Grinding plates, also known as
20 segments, are attached to plate holders, which are then attached
21 to the rotor and stator.  The RSA contains mechanical and
22 hydraulic components in its bearing pre-load assemblies that
23 maintain proper clearance between the bearing rollers and races.

24     3.   A plug screw feeder assembly transfers raw material
25 from an in-feed chute to the preheater (digester).  Driven by a
26 motor, the plug screw rotates inside a fixed throat, compressing
27 the material into a plug and moving it into the top of the
28 preheater (digester).

In the preheater (digester), the raw material is heated with
steam and then fed out the bottom of the preheater with the
discharge screw, into the refiner infeed screw, then into the
refiner housing between the rotating and static disks.  Large
metal refiner plates attached to these disks grind the wood
product into fiber.  The fiber is then dried and otherwise
treated to make fiberboard.

4.   In 2005, SierraPine commissioned RPM to rebuild two
used RGP 50-54 refiner shaft assemblies (RSA).  RPM provided a
guarantee that "[a]ll material and workmanship supplied by RPM
for the rebuild of this rotating element are guaranteed to be
free from defects and will operate to SierraPine's satisfaction
for a minimum of one year from the date of installation."  During
2006, SierraPine also ordered from RPM several screw and throat
assemblies.

**Undisputed facts pertaining to claims regarding alleged
defects in RPM's rebuild**

5.   The amount charged by RPM to rebuild each of the "drop
in" shaft assemblies was approximately $45,000.

6.   The RGP 50-54 shaft assemblies were delivered and
installed in the RGP 50-54 refiners in SierraPine's plant in
Rocklin, California.  The first such assembly was installed in
March 2006 in the refiner known as the "No. 2 refiner."  The
second was installed in June 2006 in the refiner known as the
"No. 1 refiner."

///

///

///

3

1  **Undisputed facts pertaining to claims regarding alleged defects in plug screws/throats**

3  7.   The first set of RPM plug screws and throats was delivered to SierraPine's Rocklin plant in January 2006.

5  8.   During 2006, SierraPine advised RPM of premature wear of the plug screws and throats, and RPM supplied replacement screws and throats under warranty.

8  IV.   <u>DISPUTED FACTUAL ISSUES</u>

9  The remaining claims for trial are:

10  **Disputed facts that pertain to all claims**

11  1.   Whether SierraPine has established that it suffered any compensable economic loss as the result of its alleged plant downtime.

14  **Disputed facts pertaining to claims regarding alleged defects in RPM's rebuild**

16  2.   Whether SierraPine has established that there were any defects in RPM's rebuild services.

18  3.   Whether SierraPine has established that any vibration or other problems it experienced were the result of defective rebuild services by RPM.

21  4.   Whether SierraPine has established downtime, consequential and out-of-pocket losses due to alleged defects in RPM's rebuild services.

24  5.   SierraPine attributes vibration that it experienced in the refiners to the rebuild work performed by RPM.  RPM denies that its rebuild work was defective, and that such work is the source of any vibration problems.

28  ///

4

6. SierraPine attributes plant down time and out-of-pocket losses to vibration that it contends is attributable to RPM's rebuild work.  RPM denies that SierraPine has established such economic loss, and disputes that its rebuild work caused any such loss.

**Disputed facts pertaining to claims regarding alleged defects in plug screws/throats.**

7. Whether SierraPine has established that there were any defects in the plug screws and throats supplied by RPM or that any issues were not resolved.

8. Whether SierraPine has established that RPM was the cause of any alleged problems associated with the plug screws and throats.

9. Whether SierraPine has established downtime, consequential and out-of-pocket losses due to alleged defects in RPM's manufacture of plug screws and throats.

10. SierraPine attributes plant down time and out-of-pocket losses to alleged defects in the RPM plug screws and throats. RPM maintains that its work was not defective, denies that SierraPine has established such economic loss, and disputes that its work caused any such loss.

All issues of fact remaining in dispute are subject to proof at the time of trial.

V.  <u>WITNESSES</u>

Plaintiff anticipates calling the witnesses listed on Attachment "A".

Defendant anticipates calling the witnesses listed on Attachment "B".

1    Each party may call a witness designated by the other.

2    A.   No other witnesses will be permitted to testify unless:

3        (1)   The party offering the witness demonstrates that

4    the witness is for the purpose of rebutting evidence which could

5    not be reasonably anticipated at the Final Pretrial Conference,

6    or

7        (2)   The witness was discovered after the Final

8    Pretrial Conference and the proffering party makes the showing

9    required in "B" below.

10   B.   Upon the post-pretrial discovery of witnesses, the

11   attorney shall promptly inform the Court and opposing parties of

12   the existence of the unlisted witnesses so that the Court may

13   consider at trial whether the witnesses shall be permitted to

14   testify.   The evidence will not be permitted unless:

15       (1)   The witnesses could not reasonably have been

16   discovered prior to pretrial;

17       (2)   The Court and opposing counsel were promptly

18   notified upon discovery of the witnesses;

19       (3)   If time permitted, counsel proffered the witnesses

20   for deposition;

21       (4)   If time did not permit, a reasonable summary of

22   the witnesses' testimony was provided by opposing counsel.

23   VI.   <u>EXHIBITS - SCHEDULES AND SUMMARIES</u>

24   At present, Plaintiff contemplates by way of exhibits those

25   listed on Attachment "C".

26   At present, Defendant contemplates by way of exhibits those

27   listed on Attachment "D".

28   ///

**Plaintiff's exhibits shall be listed numerically.**
**Defendant's exhibits shall be listed alphabetically.**  The parties
shall use the standard exhibit stickers provided by the Court
Clerk's Office:  pink for Plaintiff and blue for Defendant.
After three letters, note the number of letters in parenthesis
(i.e., "AAAA(4)" to reduce confusion during the trial.  All
multi-page exhibits shall be stapled or otherwise fastened
together and each page within the exhibit shall be numbered.  All
photographs shall be marked individually.  The list of exhibits
shall not include excerpts of depositions which may be used to
impeach witnesses.

Each party may use an exhibit designated by the other.  In
the event that Plaintiff and Defendant offer the same exhibit
during trial, that exhibit shall be referred to by the
designation the exhibit is <u>first</u> <u>identified</u>.  The Court cautions
the parties to pay attention to this detail so that all concerned
will not be confused by one exhibit being identified with both a
number and a letter.

A.  No other exhibits will be permitted to be introduced
unless:

(1)  The party proffering the exhibit demonstrates that
the exhibit is for the purpose of rebutting evidence which could
not be reasonably anticipated at the Pretrial Scheduling
Conference, or

(2)  The exhibit was discovered after the Pretrial
Scheduling Conference and the proffering party makes the showing
required in paragraph "B", below.
///

7

B.   Upon the post-pretrial discovery of exhibits, the attorneys shall promptly inform the Court and opposing counsel of the existence of such exhibits so that the Court may consider at trial their admissibility.   The exhibits will not be received unless the proffering party demonstrates:

(1)   The exhibits could not reasonably have been discovered prior to pretrial;

(2)   The Court and counsel were promptly informed of their existence;

(3)   Counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel.   If the exhibit(s) may not be copied, the proffering counsel must show that he has made the exhibit(s) reasonably available for inspection by opposing counsel.

C.   As to each exhibit, each party is ordered to exchange a copy identical to the Court's copy, or other reproduction of the exhibit(s) in a three-ring binder(s) by **September 17, 2012**.   The attorney or representative for each party is directed to present the original and two (2) copies of the exhibit(s) and exhibit list to the Court Clerk's Office, no later than **3:00 p.m.**, **September 17, 2012**, or at such earlier time as may be ordered by the Court.   **NO EXCEPTIONS.**

D.   **The Court shall be presented with a copy of the exhibit(s) in a 3-ring binder(s) with a side tab identifying each exhibit by number or letter.   Each binder shall be no larger than three inches in width and have an identification label on the front and side panel.**

///

VII.   DISCOVERY DOCUMENTS

A.   <u>Filing Depositions</u>.  It is the duty of counsel to ensure that any deposition which is to be used at trial has been lodged with the Clerk of the Court.  In addition, two unmarked copies of the transcripts must be delivered to the Court Clerk's Office.  Counsel are cautioned that a failure to discharge this duty may result in the Court precluding use of the deposition or imposition of such other sanctions as the Court deems appropriate.

B.   <u>Use of Depositions</u>.  The parties are ordered to file with the Court and exchange between themselves by **September 17, 2012** a statement designating portions of depositions intended to be offered or read into evidence (except for portions to be used only for impeachment or rebuttal).

C.   <u>Interrogatories</u>.  The parties are ordered to file with the Court and exchange between themselves by **September 17, 2012** the portions of Answers to Interrogatories which the respective parties intend to offer or read into evidence at the trial (except portions to be used only for impeachment or rebuttal).

VIII.   <u>FURTHER DISCOVERY OR MOTIONS</u>

Pursuant to the Court's Pretrial Scheduling Order, all discovery and law and motion was to have been conducted so as to be completed as of the date of the Final Pretrial Conference. That Order is confirmed.  The parties are free to engage in informal agreements regarding discovery and law and motion matters.  However, any such agreements will not be enforceable in this Court.

///

IX.  <u>AUDIO/VISUAL EQUIPMENT</u>

The parties are required to **file electronically** a joint request to the Courtroom Deputy Clerk, Stephanie Deutsch, by **September 10, 2012** if they wish to reserve and arrange for orientation with all parties on the Court's mobile audio/visual equipment for presentation of evidence.  There will be one date and time for such orientation.

X. <u>DATE AND LENGTH OF TRIAL</u>

A court trial is scheduled for **October 1, 2012** and will last a total of **nine (9) days** as explained at the final pretrial conference.  Counsel are to call Stephanie Deutsch, Courtroom Deputy, at (916) 930-4207, by **September 17, 2012** to confirm the dates for trial.

XI.  <u>OBJECTIONS TO PRETRIAL ORDER</u>

Each party is granted five (5) court days from the date of this Final Pretrial Order to object to any part of the order or to request augmentation to it.  A Final Pretrial Order will be modified only upon a showing of **manifest injustice.**  If no objection or modifications are made, this Order will become final without further order of the Court and shall control the subsequent course of the action, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: May 4, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE